United States District Court
Southern District of Texas
**ENTERED**
November 04, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM MANER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-15-1567 |
| REPRODUCTIVE RESEARCH | § | |
| TECHNOLOGIES, LP, JACK N. | § | |
| McCRARY, DR. ROBERT E. | § | |
| GARFIELD, and DR. RAINER FINK, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

William Maner ("Maner" or "Plaintiff") sued Reproductive Research Technologies, L.P. ("RRT"), Jack N. McCrary ("McCrary"), Dr. Robert E. Garfield ("Garfield"), and Dr. Rainer Fink ("Fink") (collectively, "Defendants"), pleading causes of action for breach of contract, quantum meruit, conspiracy, copyright infringement, and fraud.[1] Pending before the court are Defendants, McCrary and Fink's Motion to Dismiss Plaintiff's First Amended Complaint ("McCrary and Fink's Motion to Dismiss") (Docket Entry No. 9) and Defendant Reproductive Research Technologies, L.P.'s Motion for Partial Dismissal of Plaintiff's First Amended Complaint and Motion for Additional Time to File an Answer ("RRT's Motion for Partial Dismissal") (Docket Entry No. 10).  For the reasons stated below, McCrary and Fink's Motion to Dismiss will be granted in part and

---

[1] See Plaintiff's Original Complaint ("Original Complaint"), Docket Entry No. 1, pp. 5-8 ¶¶ 21-41.

denied in part.  RRT's Motion for Partial Dismissal will be granted in part and denied in part.  RRT will be granted fourteen days from the date of this Memorandum Opinion and Order to file an answer.

## I.  <u>Factual Allegations</u>

This action involves an alleged breached employment contract and subsequent copyright infringement based on work Maner did for RRT.  In Plaintiff's First Amended Complaint ("Amended Complaint") (Docket Entry No. 6), Maner alleges the facts set forth in the following three paragraphs.

In December of 2010 Maner began working for RRT to draft the grant proposal and underlying testing protocol "for the testing of the Sure CALL® electromyographic ("EMG") technology."[2]  RRT "by and through McCrary and (sic) officer of RRT," promised that RRT would employ Maner pursuant to the grant proposal's terms once grant funding was received "(the 'Contract')."[3]  Maner had a financial interest in RRT's project succeeding because he owned shares in Reproductive Health Technologies, Inc. ("RHT"), and RHT had an ownership interest in RRT.[4]  Garfield was a part-owner of RHT as well, and he allowed RHT to forfeit its corporate existence on August 1, 2014.[5]  Maner was not informed, and "it is believed that

---

[2] <u>See</u> Amended Complaint, Docket Entry No. 6, p. 3 ¶ 11.

[3] <u>Id.</u> at 3 ¶ 12.

[4] <u>Id.</u> at 4 ¶ 13; 5 ¶ 20.

[5] <u>Id.</u> at 5 ¶ 20.

RHT's forfeiture is the Defendants['] continued attempt to cut Mr. Maner out [of] RRT altogether."[6] Maner also had an interest in "being a named co-inventor on some of the numerous patent applications of the underlying technologies."[7]

RRT did not pay Maner for his work on the grant proposal, but reimbursed him for gas expenses, as contemplated under the "Contract."[8] The testing protocol and grant proposal were finalized and then submitted for review in August of 2011.[9] At that time, McCrary declined to hire Maner at RRT.[10] Defendants failed to disclose to the National Institute of Health ("NIH") Grant Review Committee that Maner was no longer part of the RRT research team, which allowed NIH to "rely upon RRT's assertion that Mr. Maner was an integral part of the team requesting the grant."[11] Although the "Contract" and grant proposal required it, no one told Maner when the grant was awarded in June of 2012.[12] Maner discovered via RRT's website in March of 2014 that the grant had

---

[6] Id.

[7] Id. at 4 ¶ 13.

[8] Id. at 4 ¶ 14.

[9] Id. at 4 ¶ 15.

[10] Id. at 4 ¶ 16.

[11] Id. at 4 ¶ 17. "Mr. Maner was one of the most prominent and well-published Uterine EMG researchers. Defendants knew that they would have a better chance of receiving the grant with Mr. Maner's name and credentials behind the request." Id.

[12] Id. at 4-5 ¶ 18.

been awarded, and attempted to contact RRT regarding its failure to hire him or inform him that the grant had been awarded.[13]   No one from RRT responded.[14]   Maner also inquired about RHT's failure to send him a K-1 (tax form), and "[i]n or around October 28, 2013, Mr. Maner called the CFO of RHT and was informed that 'RHT filed K-1s early the year before and that a K-1 for 2013 was not required.'"[15]

Regarding the awarded grant money, the Amended Complaint states the following:

21.   Upon further research, Dr. Fink's own curriculum vitae, under Major Funded Proposals on page 9, *Exhibit B*, states that the $149,197 awarded for Phase I of the grant was divided amongst Fink, McCrary and Williams in the amounts of $53,168, $65,551, and $30,459, respectively. However, the grants specified the [sic] McCrary would receive $0, a TBD software Programmer would receive $15,000, John Williams would receive $33,750, William Maner would receive $29,687, Linda Chambliss would receive $10,000, a TBD Nurse would receive $12,500, and $44,260 would be used for equipment, supplies, and other costs (Exhibit C).   Therefore, Fink and McCrary intentionally deviated from the submitted grant, failed to purchase equipment, cut Mr. Maner out of his position, and divided the majority of the grant monies among themselves, individually.

22.   Further, *Exhibit B* reports the allocation of $1,148,472 in awarded funds for Phase II of the project. Again Fink and McCrary received far more than originally proposed, approximately 45% of the monies when the grant proposal called for them to receive approximately 3%. *See Exhibit C*, page[s] 20-22.

---

[13]Id. at 4-5 ¶¶ 18, 19.

[14]Id. at 5 ¶ 19.

[15]Id.

-4-

> 23.  Additionally, Phase II was not awarded until 2013,
> yet *Exhibit B* reports Mr. Maner as a recipient of grant
> monies, when he had not worked with RRT since 2011.[16]

Maner also asserts a registered copyright in the grant and
underlying testing protocol "which has been used by RRT, and
employees thereof, without license, due to RRT's breach of the
Contract."[17]   Based on these allegations, Maner asserts claims
against each defendant for:  (1) breach of contract; (2) quantum
meruit; (3) conspiracy; (4) copyright infringement; and (5) fraud,
fraudulent inducement, and nondisclosure.[18]

## II.  Procedural Background and Standards of Review

McCrary and Fink (together) and RRT (individually) filed
motions to dismiss Maner's Original Complaint on August 12, 2015,
after which Maner amended his complaint.[19]   McCrary and Fink now
move to dismiss the Amended Complaint on two grounds.  First, they

---

[16]*Id.* at 5-6 ¶¶ 21-23.  <u>See</u> <u>also</u> Vita For Dr. Rainer J. Fink,
Ph.D., Exhibit B to Amended Complaint ("Fink C.V."), Docket Entry
No. 6-1;  Automated Real-Time Uterine EMG Diagnostic by
William Lawrence Maner ("Grant Proposal"), Exhibit C to Amended
Complaint, Docket Entry No. 6-2.  "A written document that is
attached to a complaint as an exhibit is considered part of the
complaint and may be considered in a 12(b)(6) dismissal
proceeding."  <u>Ferrer v. Chevron Corp.</u>, 484 F.3d 776, 780 (5th Cir.
2007).

[17]*Id.* at 6 ¶ 24.

[18]*Id.* at 6-10.

[19]<u>See</u> Defendants, McCrary and Fink's Motion to Dismiss
Plaintiff's Original Complaint, Docket Entry No. 3; Defendant
Reproductive Research Technologies, L.P.'s Motion for Partial
Dismissal and Motion for Additional Time in Which to File An
Answer, Docket Entry No. 4; Amended Complaint, Docket Entry No. 6.

argue that the court lacks subject-matter jurisdiction over the claims against them, and move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).[20]  Second, McCrary and Fink move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that Maner's Amended Complaint fails to state a claim on which relief can be granted.[21] RRT moves for dismissal of the conspiracy and fraud claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[22]

**A.   Rule 12(b)(1) Standard of Review**

Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'"  Halmekangas v. State Farm Fire and Cas. Co., 603 F.3d 290, 292 (5th Cir. 2010) (citations omitted).  "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." In re FEMA Trailer Formaldehyde Prods. Liability Litig., 668 F.3d 281, 286 (5th Cir. 2012) (quoting Home Builders Ass'n, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted)).  The party asserting federal subject-matter jurisdiction has the burden of showing that the jurisdictional requirement has been met.

---

[20]See McCrary and Fink's Motion to Dismiss, Docket Entry No. 9, pp. 2-3.

[21]Id.

[22]See RRT's Motion for Partial Dismissal, Docket Entry No. 10, pp. 1-2.

<u>Alabama-Coushatta Tribe of Texas v. United States</u>, 757 F.3d 484, 487 (5th Cir. 2014). "When facing a challenge to subject-matter jurisdiction and other challenges on the merits, we must consider first the Rule 12(b)(1) jurisdictional challenge prior to addressing the merits of the claim." <u>Id.</u> However, "'[s]ubject matter jurisdiction is not defeated by the possibility that the complaint ultimately fails to state a claim.'" <u>Energytec, Inc. v. Proctor</u>, 516 F. Supp. 2d 660, 671 (N.D. Tex. 2007) (citing <u>Louque v. Allstate Ins. Co.</u>, 314 F.3d 776, 782 (5th Cir. 2002), <u>cert. denied</u>, 124 S. Ct. 54 (2003)).

**B.   Rule 12(b)(6) Standard of Review**

Under Rule 8 of the Federal Rules of Civil Procedure a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub nom. Cloud v. United States</u>, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  <u>Id.</u>  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct.

1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 127 S. Ct. at 1966). When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).[23]

_____

[23]McCrary and Fink and RRT did not attach anything to their respective motions to dismiss. See McCrary and Fink's Motion to Dismiss, Docket Entry No. 9; RRT's Motion for Partial Dismissal, Docket Entry No. 10. Maner attached a three-page Memorandum to Maner from McCrary dated December 14, 2010, with the subject "Project Planning (Modified after discussion)" (the "Project Memorandum") to both his responses. See Exhibit D to Plaintiff's Response to Defendants, McCrary and Fink's Motion to Dismiss Plaintiff's First Amended Complaint ("Response to McCrary and Fink's Motion to Dismiss"), Docket Entry No. 11-1; Exhibit D to Plaintiff's Response to Defendants Reproductive Research Technologies, L.P.'s Motion for Partial Dismissal of Plaintiff's First Amended Complaint ("Response to RRT's Motion for Partial Dismissal"), Docket Entry No. 12-1. "When 'matters outside the (continued...)

## III.  Analysis

A.   Defendants McCrary and Fink's Motion to Dismiss

1.   The Court Has Subject-Matter Jurisdiction

McCrary and Fink admit that the court has federal question subject-matter jurisdiction over the copyright infringement claims

---

[23](...continued)
pleadings' are submitted in support of or in opposition to a Rule 12(b)(6) motion to dismiss, Rule 12(b) grants courts discretion to accept and consider those materials, but does not require them to do so." Ace American Ins. Co. v. Huntsman Corp., 255 F.R.D. 179, 188 (S.D. Tex. 2008) (citing Prager v. LaFaver, 180 F.3d 1185, 1188-89 (10th Cir. 1999) and Isquith v. Middle S. Utils., Inc., 847 F.2d 186, 193 n.3 (5th Cir. 1988)). If the court chooses to do so, it must treat the Rule 12(b)(6) motion as a motion for summary judgment under Rule 56. Id. (citing Fed. R. Civ. P. 12(d)). "A court exercises this discretion by determining whether the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate disposing of the action." Id. (citing Isquith, 847 F.2d at 193 n.3). "If the court refuses to consider those materials outside the pleadings, then the Rule 12(b)(6) motion remains intact and may be decided on its merits under the appropriate standard of review." Id.  See also Gamel v. Grant Prideco, L.P., No. 15-20096, 2015 WL 5306554, at *2 (5th Cir. Sep. 11, 2015).  Maner cites the Project Memorandum in both Responses in support of the same sentence: "In summary, McCrary induced Maner to work on the grant without pay by promising him a position once Phase I monies were awarded, where he was to work under Dr. Garfield for RRT." Response to McCrary and Fink's Motion to Dismiss, Docket Entry No. 11, p. 4 ¶ 6; Response to RRT's Motion for Partial Dismissal, Docket Entry No. 12, p. 5 ¶ 6.  Maner also cites in footnote 6 of his Response to RRT's Motion to Dismiss:  "As directors or senior management of RRT the individual would have known of Maner, the grant contents, and according to Dr. Fink's own CV, were beneficiaries of the change in the allocation of monies.  Further, these individuals worked alongside Plaintiff and were copied on Exhibit D to Dkt #11, which set out the project."  Response to RRT's Motion to Dismiss, Docket Entry No. 12, p. 5 n.6.  The Project Memorandum discusses Maner's role in developing the grant proposal, not a promise of future employment.  The court will not consider this attachment in its review of the 12(b)(6) motions to dismiss because it is not relevant to the motions to dismiss and considering it is not "likely to facilitate disposing of the action."  See Ace American Ins., 255 F.R.D. at 188.

against RRT.[24]  They argue, however, that the Amended Complaint does not allege that either of them is personally liable for copyright infringement.[25]  They also argue that the court "does not have, or should not choose to exercise, its supplemental jurisdiction" over the fraud and breach of contract state-law claims asserted against McCrary and Fink individually.[26]  Maner alleges jurisdiction under federal copyright law because he pled that "Plaintiff is informed and believes that Defendants, without the permission or consent of Plaintiffs, has used, and continues to use, the Copyright Work and/or to make the Copyrighted Work available for distribution to others."[27]  Alternatively, Maner argues that the claims against McCrary and Fink form part of the same case or controversy as the copyright claims, and thus the court should exercise supplemental jurisdiction over these defendants.[28]

### a.   Federal Question Jurisdiction

"Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or

---

[24]McCrary and Fink's Motion to Dismiss, Docket Entry No. 9, p. 2.

[25]See id. at 3-4.

[26]See id. at 2-3.

[27]See Response to McCrary and Fink's Motion to Dismiss , Docket Entry No. 11, p. 6 ¶ 10 (citing Amended Complaint, Docket Entry No. 6, p. 3 ¶ 9).

[28]See id. at 7 ¶ 14.

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." <u>Clark v. Tarrant County, Texas</u>, 798 F.2d 736, 741 (5th Cir. 1986).   Rule 12(b)(1) challenges to subject-matter jurisdiction come in two forms: "facial" attacks and "factual" attacks.  <u>See Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981).  A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. <u>Id.</u> A factual attack challenges the existence of subject-matter jurisdiction in fact, and matters outside the pleadings — such as testimony and affidavits — may be considered.  <u>Id.</u> Because McCrary and Fink have not submitted evidence outside Maner's pleadings in support of their motion to dismiss, the motion is a facial attack, and review is limited to whether the complaint sufficiently alleges jurisdiction.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  <u>See also id.</u> § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights . . . .  No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to . . . copyrights.").  McCrary and Fink argue that the Amended Complaint does not suggest that these individual defendants

-11-

committed copyright infringement.[29]  They argue that McCrary's only
dealings with Maner were in the "course and scope" of McCrary's
employment at RRT, and "[the Amended Complaint] says nothing
whatsoever about any personal liability or culpability of [Fink]."[30]
Maner argues that "[t]he individual defendants are all either
senior management, in charge of implementing the grant protocol, or
corporate officers which would be contributory and/or vicarious
liable for infringement."[31]  Maner argues that he pleaded that
"Defendants, without the permission or consent of Plaintiffs, has
used, and continues to use, the Copyrighted Work and/or to make the
Copyrighted Work available for distribution to others."[32]

   "Cases have held that all participants in copyright
infringement are jointly and severally liable as tortfeasors.  A
corporate officer may be held vicariously liable (1) if the officer
has a financial stake in the activity and (2) if the officer has the
ability and right to supervise the activity causing infringement."
Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc., 712
F. Supp. 1257, 1262 (S.D. Tex. 1989), aff'd, 915 F.2d 1567 (5th Cir.
1990) (internal citations omitted).  See also Broadcast Music, Inc.

---

[29]See McCrary and Fink's Motion to Dismiss, Docket Entry No. 9,
pp. 3-4.

[30]See id. at 4.

[31]Response to McCrary and Fink's Motion to Dismiss, Docket
Entry No. 11, p. 6 ¶ 11.

[32]Id. ¶ 10 (citing Amended Complaint, Docket Entry No. 6,
¶ [3]9).

-12-

v. Tex Border Management, Inc., 11 F. Supp. 3d 689, 693-94 (N.D. Tex. 2014); Sanchez v. Hacienda Records and Recording Studio, Inc., No. H-11-3855, 2013 WL 529950, at *8 (S.D. Tex. 2013) ("A controlling corporate officer or shareholder may be vicariously liable for infringement along with his or her corporation, despite any immunity provided by state corporation law.").

The Amended Complaint alleges that "RRT, and employees thereof" are using and distributing Maner's copyrighted work.[33] It also alleges that McCrary is the CEO of RRT, and Fink is part of senior management there.[34]  Both of them were allegedly involved in developing the grant proposal, and the Amended Complaint states that "Plaintiff is informed and believes that Defendants have reproduced the Copyrighted Work and filed the Copyrighted Work with the National Institute of Health for the purpose of obtaining a grant and have subsequently received such grant," showing a financial stake in the activity and the ability and right to supervise the activity.[35]  Because Maner has alleged facts capable

---

[33]See Amended Complaint, Docket Entry No. 6, p. 6 ¶ 24 ("Mr. Maner asserts a copyright, which has been duly registered, in the grant and underlying testing protocol, which has been used by RRT, and employees thereof, without license, due to RRT's breach of the Contract.").

[34]See id. at 1-2 ¶¶ 2, 4; 10 ¶ 52.  See also Fink C.V., Exhibit B to Amended Complaint, Docket Entry No. 6-1, p. 1 (naming Fink "Chief Technology Officer, Reproductive Research Technologies, LP 2006-present").

[35]See Amended Complaint, Docket Entry No. 6, p. 8 ¶ 40.  See also id. at 5-6 ¶¶ 21-22; 9 ¶ 44.  See also Grant Proposal, Docket Entry No. 6-2, pp. 18-19.

of establishing a claim for copyright infringement, this action is not subject to dismissal for lack of subject-matter jurisdiction.[36]

   b.   Supplemental Jurisdiction

   28 U.S.C. § 1367(a) states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  McCrary and Fink argue that even if the claims form part of the same case or controversy, the court should use its discretion to decline to exercise supplemental jurisdiction because "the only real basis for asserting individual claims is that these two gentlemen have a 'financial stake in the activity.'"[37]  They argue that "[t]his is hardly a sound basis for the Court to

------

[36]Maner also alleges that the court has subject matter jurisdiction "pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and Defendant, Dr. Garfield is a citizen of Arizona, while Plaintiff and the other defendants are citizens of Texas."  Amended Complaint, Docket Entry No. 6, p. 3 ¶ 8.c.  Complete diversity is required for cases relying on diversity jurisdiction under 28 U.S.C. § 1332.  Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806)).  "Complete diversity 'requires that all persons on one side of the controversy be citizens of different states than all persons on the other side.'"  Id.  Because Maner, the plaintiff, and McCrary and Fink, two of the defendants, are citizens of Texas, there is no complete diversity in this case.

[37]McCrary and Fink's Motion to Dismiss, Docket Entry No. 9, p. 4.

-14-

exercise its supplemental jurisdiction as the same could be said for any shareholder of any corporation in America."[38]

As discussed above, the court has original jurisdiction over the copyright infringement claims against McCrary and Fink.  The breach of contract and fraud claims stem from the same alleged acts and circumstances that led to the alleged copyright infringement.  Thus, they derive from a "common nucleus of operative fact," and it is appropriate for the court to exercise supplemental jurisdiction over the state-law claims against these defendants.  See Chicago v. Int'l College of Surgeons, 118 S. Ct. 523, 529 (1997) (citing United Mine Workers of America v. Gibbs, 86 S. Ct. 1130, 1138 (1966)); Donahue v. Tokyo Electron America, Inc., 42 F. Supp. 3d 829, 839-41 (W.D. Tex. 2014).

2.  Failure to State a Claim for Which Relief May Be Granted

McCrary and Fink next argue that the Amended Complaint "still fails to state a plausible basis for claiming personal liability on the part of either of McCrary or Fink within the meaning of Iqbal, supra, and their progeny."[39]  They argue that even if RRT failed to offer Maner a promised position, there are no specific allegations

_____

[38]Id. (citing 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.")).

[39]McCrary and Fink's Motion to Dismiss, Docket Entry No. 9, p. 5.

of wrongdoing by McCrary or Fink in their individual capacities.[40]
Maner responds that when McCrary contracted with him McCrary did
not have the intent to hire him.[41]   Maner also argues that the
individual defendants, "as beneficiaries of the fraud, and with
knowledge of the fraud, can be held vicariously liable for the
fraudulent acts of another."[42]

> a.   Maner's Breach of Contract, Quantum Meruit, and
>      Fraud Claims Against McCrary Are Not Subject to
>      Dismissal.

"A Rule 12(b)(6) motion to dismiss argues that, irrespective
of jurisdiction, the complaint fails to assert facts that give rise
to legal liability of the defendant."   <u>Willrich v. US Marshal's
Office</u>, No. 4:14-cv-561, 2015 WL 4776436, at *4 (E.D. Tex. Aug. 13,
2015).   McCrary and Fink argue that the Amended Complaint contains
no plausible basis for a claim against either defendant.[43]   McCrary
and Fink cite <u>Haskett v. Continental Land Resources, LLC</u>, No. G-14-
0281, 2015 WL 1419731 (S.D. Tex. March 27, 2015), but that case is
distinguishable.[44]   There, the court held that "Plaintiff's specula-
tions and opinions about a position he did not attain based on his

---

[40]<u>See</u> <u>id.</u>

[41]<u>See</u> Response to McCrary and Fink's Motion to Dismiss, Docket
Entry No. 11, pp. 3-4.

[42]<u>Id.</u> at 5 ¶ 8.

[43]<u>See</u> McCrary and Fink's Motion to Dismiss, Docket Entry No. 9,
p. 5.

[44]<u>Id.</u>

-16-

prior job experiences are not sufficient to sustain a plausible claim under the [Age Discrimination in Employment Act] that meets the Twombly and Iqbal pleading standards." Haskett, 2015 WL 1419731, at *2.  In Haskett the issue was whether the position the plaintiff was allegedly not selected for was an independent contractor position or an employee position.  See id.  The plaintiff "[could not] point to any specific job for which he was an unsuccessful applicant."  Id.  In contrast, Maner has provided facts that support a claim that McCrary promised Maner future employment at RRT and did not honor that promise.[45]  Maner has stated plausible claims for relief for breach of contract and quantum meruit against McCrary.

While "failure to perform, standing alone, cannot establish fraudulent intent, slight circumstantial evidence of fraud, when considered with the breach of a promise to perform, is sufficient to support a finding of fraudulent intent." Columbia/HCA Healthcare Corp. v. Cottey, 72 S.W.3d 735, 745 (Tex. App.—Waco 2002, no pet.) (citing Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432 (Tex. 1986)); see also Arete Partners, L.P. v. Gunnerman, 594 F.3d 390, 394-95 (5th Cir. 2010) (discussing Texas law on fraud and acknowledging this rule).  The Amended Complaint alleges that McCrary's representations were knowingly false and "used to induce Plaintiff to expend his time, toil, and effort

---

[45]See Amended Complaint, Docket Entry No. 6, pp. 3, 9-10.

without compensation."[46]   Maner argues that the subsequent acts
pleaded in the Amended Complaint are slight circumstantial evidence
sufficient to support a fraud finding.[47]   The Amended Complaint
alleges that McCrary, as CEO of RRT, promised Maner an employment
position if the grant proposal was successful, did not honor that
contractual promise, and never intended to honor it.[48]   It also
alleges that McCrary failed to inform Maner when the grant was
received and divided the grant monies differently than agreed to,
and misrepresented Maner's association with RRT to the NIH when
submitting the grant proposal.[49]   Maner's fraud claim against
McCrary is not subject to dismissal for failure to state a
plausible claim for relief.   See Iqbal, 129 S. Ct. at 1950.
Accordingly, the motion to dismiss the breach of contract, quantum
meruit, and fraud claims against McCrary will be denied.[50]

> b.   Maner's Breach of Contract, Quantum Meruit, and
> Fraud Claims Against Fink Are Subject to Dismissal.

In considering a Rule 12(b)(6) motion to dismiss, the court
first identifies mere conclusory allegations and disregards them
because they are not entitled to the assumption of truth.   Iqbal,

---

[46]Id. at 9 ¶ 49.

[47]See Response to McCrary and Fink's Motion to Dismiss, Docket
Entry No. 11, pp. 3-5, 6-10.

[48]See Amended Complaint, Docket Entry No. 6, pp. 3, 9-10.

[49]See id. at 3-6.

[50]See infra § III.B.2 for the discussion regarding the
conspiracy claim against all Defendants.

129 S. Ct. at 1940.  The court then considers the well-pleaded factual allegations, assuming their veracity, and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1940-41.

The Amended Complaint does not contain well-pleaded factual allegations of misconduct by Fink individually.  Maner alleges that Fink received more money than he was entitled to under the original grant proposal terms; and, "[t]herefore, Fink and McCrary intentionally deviated from the submitted grant, failed to purchase equipment, cut Mr. Maner out of his position, and divided the majority of the grant monies among themselves, individually."[51]  The rest of the Amended Complaint alleges generally that "Defendants" engaged in certain activities, but does not purport to show that Fink was personally involved.[52]  Nothing pleaded indicates Fink made any promises to Maner, with or without intent to perform or for a purpose of deceiving.  See Arete Partners, 594 F.3d at 394-95 (citing Spoljaric, 708 S.W.2d at 432).  Maner has not pleaded facts specific to Fink's involvement in a breach of contract, quantum meruit, or fraud.[53]  The Amended Complaint alleges facts that are

---

[51]See Amended Complaint, Docket Entry No. 6, pp. 5-6 ¶¶ 21-22.

[52]The Amended Complaint only mentions Fink by name twice in the 14 paragraphs of facts.  See id. at 3-6 ¶¶ 11-25.  Both mentions are in conjunction with money received and divided in Phase I and Phase II of the project.  Id.

[53]See infra § III.B.2 for the discussion regarding the conspiracy claim against all Defendants.

"merely consistent with" Fink's liability, but "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'"   See Iqbal, 129 S. Ct. at 1949-50; Fed. R. Civ. P. 8(a)(2).   Accordingly, the motion to dismiss the breach of contract, quantum meruit, and fraud claims against Fink will be granted.

c.   Maner's Copyright Infringement Claim Against McCrary and Fink Is Not Subject to Dismissal.

The only other claim asserted against McCrary and Fink is for copyright infringement.[54]   The Amended Complaint alleges that Defendants "has used, and continues to use, the Copyrighted Work and/or to make the Copyrighted Work available for distribution to others" without Maner's permission or consent.[55]   Specifically, the Amended Complaint alleges that the Defendants reproduced and filed the copyrighted work with the NIH.[56]   Maner attached the Certificate of Registration for his copyrighted work, effective date April 13, 2014, to his Original Complaint.[57]   He argues that McCrary and Fink

---

[54]See Amended Complaint, Docket Entry No. 6, pp. 7-9 ¶¶ 36-44.

[55]See id. at 8 ¶ 39.   See also discussion at § III.A.1.a supra. Of course, the question of subject-matter jurisdiction is separate from the determination of whether a plaintiff has stated a valid claim for relief.   See Smith v. Regional Transit Authority, 756 F.3d 340, 344 (5th Cir. 2014).

[56]See Amended Complaint, Docket Entry No. 6, pp. 7-9 ¶¶ 36-44.

[57]See Certificate of Registration for Automated Real-Time Uterine EMG Diagnostic, Exhibit 1 to Original Complaint, Docket
(continued...)

-20-

are vicariously liable for copyright infringement, as pleaded in the Amended Complaint.[58]  McCrary and Fink's Motion to Dismiss does not specifically address the copyright claim.[59]

"Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; [and] (2) to prepare derivative works based upon the copyrighted work."  17 U.S.C. § 106.  To prove copyright infringement, a plaintiff must establish ownership of a valid copyright and establish that the defendant copied that material.  Baisden v. I'm Ready Productions, Inc., 693 F.3d 491, 499 (5th Cir. 2012).  "A corporate officer may be held vicariously liable [for copyright infringement] (1) if the officer has a financial stake in the activity and (2) if the officer has the ability and right to supervise the activity causing infringement."  Fermata Int'l Melodies, 712 F. Supp. at 1262; see also Broadcast Music, Inc., 11 F. Supp. 3d at 693-94; Sanchez, 2013 WL 529950, at *8 ("A controlling corporate officer or shareholder may be vicariously

---

[57](...continued)
Entry No. 1-1, p. 1.  Registration with the copyright office is not a prerequisite to copyright protection, but it is a prerequisite to maintaining an infringement lawsuit.  See 17 U.S.C. § 411; see also Creations Unlimited, Inc. v. McCain, 112 F.3d 814, 816 (5th Cir. 1997).

[58]See Response to McCrary and Fink's Motion to Dismiss, Docket Entry No. 11, p. 6.

[59]See McCrary and Fink's Motion to Dismiss, Docket Entry No. 9, p. 5.

liable for infringement along with his or her corporation, despite any immunity provided by state corporation law."). All participants in copyright infringement are jointly and severally liable as tortfeasors. <u>Fermata Int'l Melodies</u>, 712 F. Supp. at 1262.

Maner has pleaded that he owns a valid copyright, that Defendants copied his copyrighted work without his permission in order to obtain the grant, and that Defendants continue to use the copyrighted work.[60]  <u>See Baisden</u>, 693 F.3d at 499.  McCrary is CEO of RRT, and Fink is senior management at RRT.[61]  Both allegedly have a financial stake in the activity; for instance, the Amended Complaint alleges that they both received part of the grant money when it was awarded.[62]  <u>See Fermata Int'l Melodies</u>, 712 F. Supp. at 1262.  Accepting these factual allegations as true, Maner has stated a plausible claim for relief that rises "above the speculative level." <u>See Twombly</u>, 127 S. Ct. at 1965.  Accordingly, the copyright infringement claim is not subject to dismissal.

## B.   Reproductive Research Technologies' Motion for Partial Dismissal

RRT argues that the court should dismiss the fraud and conspiracy claims against it because the Amended Complaint fails to

---

[60]<u>See</u> Amended Complaint, Docket Entry No. 6, p. 8.

[61]<u>See</u> <u>id.</u> at 2 ¶ 4; Fink C.V., Exhibit B to Amended Complaint, Docket Entry No. 6-1, p. 1.

[62]<u>See</u> Amended Complaint, Docket Entry No. 6, pp. 5-6 ¶¶ 21-24.

state plausible claims for relief on those causes of action.[63]
Maner responds that he has pled sufficient facts to identify fraud
on RRT's part and to identify the conspiracy.[64]

     1.   <u>Maner's Fraud Claim Against RRT is Not Subject to Dismissal</u>.

RRT argues that Maner has not met the particularity
requirements for pleading fraud required by Fed. R. Civ. P. 9(b),
and thus his fraud claim is subject to dismissal under Fed. R. Civ.
P. 12(b)(6) for failure to state a claim.[65]  Maner argues that RRT
is vicariously liable for McCrary's actions and that the Amended
Complaint provides specific facts that permit a reasonable
inference that McCrary never intended to award Maner the job,
therefore defrauding him.[66]

Fed. R. Civ. P. 9(b) imposes a heightened pleading standard on
fraud claims.  <u>See</u> <u>Williams v. Bell Helicopter Textron, Inc.</u>, 417
F.3d 450, 453 (5th Cir. 2005).  Under this standard a party must
state with particularity circumstances alleged to constitute fraud.
<u>See</u> <u>Campbell v. Bravo Credit</u>, No. H-14-2794, 2015 WL 502234, at

_____

    [63]<u>See</u> RRT's Motion for Partial Dismissal, Docket Entry No. 10,
pp. 1-4.

    [64]<u>See</u> Response to RRT's Motion for Partial Dismissal, Docket
Entry No. 12, pp. 2-6.

    [65]<u>See</u> RRT's Motion for Partial Dismissal, Docket Entry No. 10,
p. 3.

    [66]<u>See</u> Response to RRT's Motion for Partial Dismissal, Docket
Entry No. 12, pp. 3-5.

\*5–\*6 (S.D. Tex. Feb. 5, 2015). "This Circuit's precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." <u>Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.</u>, 565 F.3d 200, 207 (5th Cir. 2009) (internal quotation marks and citations omitted). "Rule 9(b) requires that plaintiffs plead enough facts to illustrate "the 'who, what, when, where, and how' of the alleged fraud.'" <u>Carroll v. Fort James Corp.</u>, 470 F.3d 1171, 1174 (5th Cir. 2006) (citing <u>Bell Helicopter</u>, 417 F.3d at 453). A principal may be held liable for the fraudulent misrepresentations of its agent "'so long as the third person reasonably believed the agent was acting within the scope of his authority.'" <u>NationsBank, N.A. v. Dilling</u>, 922 S.W.2d 950, 953 (Tex. 1996) (citing <u>Bankers Life Ins. Co. of Nebraska v. Scurlock Oil Co.</u>, 447 F.2d 997, 1004 n.12 (5th Cir. 1971)); <u>see also Bohnsack v. Varco, L.P.</u>, 668 F.3d 262, 272–73 (5th Cir. 2012).

The Amended Complaint alleges that McCrary, as CEO of RRT, promised to give Maner a job at RRT if the grant proposal was successful.[67] As discussed above, Maner argues that this, along with Defendant's alleged subsequent acts show a plausible claim for fraud.[68] The subsequent acts include McCrary failing to inform

---

[67]<u>See</u> Amended Complaint, Docket Entry No. 6, p. 3 ¶ 12.

[68]<u>See</u> Response to RRT's Motion for Partial Dismissal, Docket Entry No. 12, pp. 3–5 ¶¶ 5–6. <u>See</u> also discussion at § III.A.2.a <u>supra</u>.

Maner when the grant was received while continuing to use his name in conjunction with the grant submission to NIH, the lack of response by RRT and RHT when Maner attempted to communicate with the companies, the fact that the grant money was divided differently than originally set out in the grant proposal, and the fact that Maner never received any grant money, despite being named as a recipient.[69]  See Cottey, 72 S.W.3d at 745 (citing Spoljaric, 708 S.W.2d 432) ("Although failure to perform, standing alone, cannot establish fraudulent intent, slight circumstantial evidence of fraud, when considered with the breach of a promise to perform, is sufficient to support a finding of fraudulent intent."). McCrary allegedly made promises in his capacity as CEO of RRT while acting within the scope of his authority there.[70]  See NationsBank, 922 S.W.2d at 953.  These allegations demonstrate the "who, what, when, where, and how" of the alleged fraud, and Maner has satisfied the heightened pleading requirement of Rule 9(b).  See Carroll v. Fort James Corp., 470 F.3d at 1174.  Accordingly, RRT's motion to dismiss the fraud claim against it will be denied.

   2.   Maner's Conspiracy Claim Against All Defendants is
        Subject to Dismissal

     RRT argues that conspiracy is an intentional tort that must be based on an underlying intentional tort, and that "a conspiracy to

---

[69]See Amended Complaint, Docket Entry No. 6, pp. 4-6 ¶¶ 17-23.

[70]See id. at 10 ¶ 53.

breach a contract is neither intentional nor actionable" under Texas law.[71]  Maner responds that "the facts that [each defendant] knew of the failure of compensation and that each of the individual defendants deviated from the grant proposal's payments to take the share indicated for plaintiff highly suggest that they conspired to exclude plaintiff from his share of the grant funding."[72] Additionally, RHT, Maner's only financial link to the project, was "rendered defunct," while its officers failed to communicate with Maner regarding his K-1s, and RRT failed to contact Maner regarding the grant proposal's success.[73]  Maner argues that although a corporation may not conspire with itself, these alleged facts show that the "individual defendants conspired among themselves to deprive plaintiff of his justly earned moneys and then divided the monies amongst themselves" and "used the limited partnership to further their individual goals."[74]  Maner cites paragraph 47 of the Amended Complaint, which states: "Plaintiff relied upon these representations, which were material to Plaintiff in expending his

---

[71]See RRT's Motion for Partial Dismissal, Docket Entry No. 10, p. 4 (citing Arthur W. Tifford, PA v. Tandem Energy Corp., 562 F.3d 699, 709-10 (5th Cir. 2009); Firestone Steel Products Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996); and Leasehold Expense Recovery, Inc. v. Mothers Work, Inc., 331 F.3d 452, 463 (5th Cir. 2003)).

[72]See Response to RRT's Motion for Partial Dismissal, Docket Entry No. 12, p. 6 ¶ 10.

[73]See id.

[74]Id.

time, toil, and effort, without compensation, on the business of RRT."[75]

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 127 S. Ct. at 1964-65). Under the heading "Count 3: Conspiracy," the Amended Complaint states:

> 34. The Defendant(s) were members of a combination of two or more people, with, upon information and belief, the specific intent and/or "meeting of the minds" to accomplish monetary gain through unlawfully breaching the Contract, and/or committing fraud as herein described.
>
> 35. The Defendant(s) committed the overt acts of breach of contract and/or fraud in perpetuating their objective, and these wrongful acts have caused injury to the Plaintiff for which Plaintiff herein sues.

The elements of conspiracy in Texas are: "'(1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt, unlawful acts; and (5) proximately resulting in injury.' A defendant's liability is derivative of an underlying tort; without independent tortious conduct, there is no actionable civil conspiracy claim." Arthur W. Tifford, PA v. Tandem Energy Corp., 562 F.3d 699, 709-10 (5th Cir. 2009) (citing Miller v. Raytheon Aircraft Co., 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.)) (internal citation omitted); Van Duzer v. U.S. Bank Nat. Ass'n, 995 F. Supp. 2d 673, 693 (S.D. Tex. 2014). "Thus, conspiracy to breach a contract is

---

[75]Id.

not actionable under Texas law." <u>Monclat Hospitality, LLC v.</u> <u>Landmark American Ins. Co.</u>, No. 4:15-cv-632-A, 2015 WL 5920757, at *5 (N.D. Tex. Oct. 8, 2015) (citing <u>Grizzle v. Texas Commerce Bank</u>, 38 S.W.3d 265, 285 (Tex. App.—Dallas 2001), <u>rev'd on other grounds</u>, 96 S.W.3d 240 (Tex. 2003)).  Maner cannot rely on the breach of contract claim to support a conspiracy claim.

Even with fraud as alleged underlying intentionally tortious conduct for the conspiracy, "[t]he Fifth Circuit, interpreting Texas law, has held that 'a corporation cannot conspire with itself, no matter how many of its agents participated in the wrongful action.'" <u>Id.</u> (quoting <u>Leasehold Expense Recovery</u>, 331 F.3d at 463); <u>United States ex rel. Ligai v. ETS-Lindgren Inc.</u>, No. H-112973, 2014 WL 4649885, at *14–*15 (S.D. Tex. Sept. 16, 2014), <u>aff'd sub nom.</u>, <u>United States ex rel. Ligai v. ESCO</u> <u>Technologies, Inc.</u>, 611 F. App'x 219 (5th Cir. 2015).  "[T]he actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." <u>Orthoflex. Inc. v. ThermoTek,</u> <u>Inc.</u>, Nos. 3:11-CV-0870-D, 3:10-CV-2618-D, 2012 WL 2864510, at *6 (N.D. Tex. July 12, 2012) (quoting <u>Holloway v. Skinner</u>, 898 S.W.2d 793, 795 (Tex. 1995)).  "[T]herefore[,] employees and agents cannot conspire with each other unless they act outside the scope of their employment or for their own personal benefit." <u>See Mathis v. DCR</u> <u>Mortgage III Sub, I, LLC</u>, 952 F. Supp. 2d 828, 836–37 (W.D. Tex. July 8, 2013) (quoting <u>Crouch v. Trinque</u>, 262 S.W.3d 417, 427 (Tex. App.—Eastland 2008, no pet.)).

Maner has not alleged any facts that would plausibly lead to the conclusion that the individual defendants were acting outside the scope of their agency for RRT when they submitted the grant proposal.  The Amended Complaint does not provide any facts as to how RRT participated in a conspiracy.  See Leasehold Expense Recovery, 331 F.3d at 463 (finding LER's claim that "Mothers conspired with its counsel, Graham Miles, to enter secret 'side deals' with its landlords in an attempt to avoid compensating LER under the Contract" failed because "LER has not alleged that Miles has any independent interest that would make it possible for him, under Texas law, to conspire with Mothers"); Mastronardi v. Wells Fargo Bank, N.A., No. 4:15-cv-452-A, 2015 WL 5472924, at *6-*7 (N.D. Tex. Sept. 17, 2015).  This conspiracy claim "is a bare-bones allegation of legal conclusions without supporting factual allegations," and does not meet the pleading and specificity requirements of the Federal Rules of Civil Procedure.  See DiNoto v. USAA Cas. Ins. Co., No. H-13-2877, 2014 WL 4923975, at *11 (S.D. Tex. Sept. 30, 2014); King v. Jarrett, No. A-15-cv-00491-LY-ML, 2015 WL 5794021, at *11-*12 (W.D. Tex. October 1, 2015).  The Amended Complaint fails to state a conspiracy claim for which relief can be granted against any defendant.  Accordingly, RRT's motion to dismiss and McCrary and Fink's motion to dismiss will be granted as to the conspiracy claim.

## IV.   <u>Conclusion and Order</u>

For the reasons stated above, the claims against Fink and McCrary will not be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).   The breach of contract, quantum meruit, and fraud claims will be dismissed as to Fink but not as to McCrary.   The copyright infringement claim will not be dismissed against either Fink or McCrary.   The conspiracy claim against all defendants will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).   Additionally, RRT will have fourteen days from the date of this Memorandum Opinion and Order to file an answer.

Accordingly, Defendants, McCrary and Fink's Motion to Dismiss Plaintiff's First Amended Complaint (Docket Entry No. 9) is **GRANTED in PART** and **DENIED in PART**, and Defendant Reproductive Research Technologies, L.P.'s Motion for Partial Dismissal of Plaintiff's First Amended Complaint and Motion for Additional Time to File an Answer (Docket Entry No. 10) is **GRANTED in PART** and **DENIED in PART**.

**SIGNED** at Houston, Texas, on this 4th day of November, 2015.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-30-